Donald J. WILLY, Plaintiff-Appellant,

and

George A. Young,
Respondent-Appellant,

v.

The COASTAL CORP., Coastal States
Management Co., Inc., et al.,
Defendants-Appellees.

No. 86–2992.

United States Court of Appeals,
Fifth Circuit.

Sept. 29, 1988.

Edward F. Sherman, Austin, Tex., for amicus curiae Texas Trial Lawyers Assn.

Michael A. Maness, Houston, Tex., for Donald J. Willy.

George A. Young, Houston, Tex., pro se.

David Van Os, James C. Harrington, Austin, Tex., Sharon D. Groth, Houston, Tex., for amicus curiae Texas AFL–CIO.

Bruce V. Griffiths, Staff Counsel, Houston, Tex., for amicus curiae ACLU–Houston.

James L. Reed, Jr., Robert C. DeMoss, Houston, Tex., for defendants-appellees.

Peter Linzer, University of Houston Law Center, Houston, Tex., for amicus curiae.

Before GARWOOD and JONES, Circuit Judges, and HUGHES,* District Judge.

GARWOOD, Circuit Judge:

Plaintiff-appellant Donald J. Willy (Willy) brought this action in the Texas courts seeking primarily to allege a wrongful discharge claim under *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex. 1985), or some extension thereof. He also asserted other related claims (such as defamation and blacklisting) under state law. Defendants-appellees removed the case to federal court on the basis of original federal question jurisdiction under 28 U.S.C. §§ 1331, 1441, arguing that federal issues pleaded as a part of Willy's state wrongful discharge claim made this a federal case. The district court agreed and subsequently dismissed Willy's wrongful discharge claim for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), treated Willy's remaining claims as pendent state claims and dismissed them under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), and ordered Willy and his attorney to pay $22,625 in attorneys' fees to defendants as a sanction pursuant to Fed.R.Civ.P. 11. We find that the district court lacked subject matter jurisdiction over the case, and that the amount of the Rule 11 sanctions is not adequately supported by the record and should be reconsidered in light of our opinion herein and the principles announced in *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866 (5th Cir.1988). Accordingly, we reverse and remand.

**Facts and Proceedings Below**

Willy is a lawyer who was employed as in-house counsel from May 1981 until he was fired in October 1984 by defendant-appellee Coastal States Management Co., a wholly-owned subsidiary of defendant-appellee The Coastal Corporation. These entities (collectively, Coastal), are involved in the oil and gas industry through other subsidiaries of The Coastal Corporation. Willy claims that he was fired because he insisted that Coastal comply with various state and federal environmental and securities laws and because he would not act in violation of those laws.

Within a month of his dismissal, Willy filed an administrative complaint against Coastal with the United States Department of Labor pursuant to 29 C.F.R. pt. 24 (1984). He argued that by firing him Coastal had violated the "whistleblower" provisions of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9610; the Clean Air Act, 42 U.S.C. § 7622; the Solid Waste Disposal Act, 42 U.S.C. § 6971; the Water Pollution Control Act, 33 U.S.C. § 1367; the Safe Drinking Water Act, 42 U.S.C. § 300j–9(i); and the Toxic Substances Control Act, 15 U.S.C. § 2622. The Department of Labor investigated and agreed. The Administrative Law Judge (ALJ) to whom Willy's case was assigned, however, found that Willy had engaged in only intracorporate activity, not communications with a governmental agency, and recommended dismissal of Willy's claim under *Brown & Root, Inc. v. Donovan,* 747 F.2d 1029 (5th Cir.1984) (the "whistleblower" provision of the Energy Reorganization Act, 42 U.S.C. § 5851(a)(3), does not protect an employee from filing an intracorporate quality control report). On June 4, 1987, the Secretary of Labor (Secretary) rejected the ALJ's recommendation and remanded, finding from the record that Willy had been in contact with governmental agencies, presumably federal, before he was fired. The Secretary further "held" that *Brown & Root* was incorrectly decided and that this Court should be given an opportunity to

* District Judge of the Southern District of Texas, sitting by designation.

reconsider its decision in light of *Kansas Gas & Electric Co. v. Brock*, 780 F.2d 1505 (10th Cir.1985), *cert. denied*, 478 U.S. 1011, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986), and *Mackowiak v. University Nuclear Systems*, 735 F.2d 1159 (9th Cir.1984). The present status of Willy's administrative action is not reflected by the record or briefs.

On November 22, 1985, after the ALJ's recommendation of dismissal but before remand by the Secretary, Willy filed this action in Texas state court, naming as defendants Coastal and several individuals associated with Coastal. He asserted claims for wrongful discharge, breach of the codes of ethics of the American and Texas bar associations, invasion of privacy, defamation, blacklisting, and interference with contractual and business relationships. Although Willy's complaint does not mention case law, he obviously attempted to plead his wrongful discharge action under *Sabine Pilot*, which established a Texas common law wrongful discharge action for at-will employees who have been fired for refusing to perform an illegal act, or some extension thereof. Willy alleged that he sought to cause his employer to comply with, and that he refused to engage in activity that assertedly would violate, state and federal environmental and securities laws, specifically naming the Clean Water Act (33 U.S.C. §§ 1251, *et seq.*), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, *et seq.*), the Clean Air Act (42 U.S.C. §§ 7401, *et seq.*), the Safe Drinking Water Act (42 U.S.C. §§ 300f, *et seq.*), and the Solid Waste Disposal Act (42 U.S. C. §§ 6901, *et seq.*).[1]

On December 30, 1985, defendants removed the case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1441 on the basis of original federal question jurisdiction under 28 U.S.C. § 1331. They contended that federal question jurisdiction appears on the face of Willy's complaint because the federal statutes that Willy claimed he was fired for refusing to violate formed a necessary element of his *Sabine Pilot*-type claim. The district court agreed and denied Willy's initial motion to remand. Willy then moved for partial summary judgment and defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and for sanctions pursuant to Fed.R.Civ.P. 11. Before the district court ruled on these motions, Willy twice more unsuccessfully moved for remand. On September 17, 1986, the district court denied Willy's motion for partial summary judgment and on November 12, 1986, dismissed Willy's *Sabine Pilot*-type action pursuant to Rule 12(b)(6), dismissed Willy's remaining pendent state law claims under *Gibbs*, 647 F.Supp. 116, and imposed Rule 11 sanctions in the amount of $22,625 jointly and severally against Willy and his attorney.[2] This appeal followed.

## Discussion

Because the district court dismissed Willy's complaint for failure to state a claim pursuant to Rule 12(b)(6), *see Voter Information Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 210 (5th Cir.1980), and because we look to the well-pleaded complaint to determine subject matter jurisdiction, *see, e.g., Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983), we accept as true for the purposes of this appeal Willy's factual allegations that are relevant to subject matter jurisdiction, *see Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1982). We note, however, that Willy's factual allegations are often imprecise. For instance, he discusses an episode where he sought to prevent changes in a report, but does not indicate whether the report was for purely intracorporate purposes. Sim-

---

1. In his state court pleading, Willy alleged only the names of these statutes, and did not otherwise state in his pleading any citation for the statutes he named; we have furnished the citations appearing in parentheses in the text. We, of course, imply no pleading requirement concerning case law or statutory citations.

2. After entering judgment on these orders, the district court entered a modified judgment, Fed. R.Civ.P. 60(b), that dismissed counterclaims pleaded by defendants.

ilarly, a contact with a governmental agency is hinted at by a vague discussion of "actions" he took that "were the first legal step" in reporting to the Securities and Exchange Commission Coastal's noncompliance with environmental laws. Because we hold that the district court did not have subject matter jurisdiction over Willy's action under any reasonable construction of his state court pleading, we find it unnecessary to resolve these ambiguities. Thus, for purposes of this appeal, we will assume, *arguendo*, that Willy alleges that he was fired because he complied with and/or refused to violate federal and state environmental and federal securities laws and that his activities in this connection were not wholly intracorporate.[3]

## I. Removal Jurisdiction

As a preliminary matter, we emphasize that the burden of establishing federal jurisdiction is placed upon the party seeking removal. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Moreover, removal jurisdiction raises significant federalism concerns, *see Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986); *Franchise Tax Board*, 103 S.Ct. at 2846, and we must therefore strictly construe removal jurisdiction. *Shamrock Oil & Gas Corp v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust*, 719 F.2d 760, 762 (5th Cir. 1983); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979).

The right to remove a case from state to federal court derives solely from the statutory grant of jurisdiction in 28 U.S.C. § 1441, which provides in relevant part:

**3.** We do not, however, purport to decide these matters and in no way reach the substantive merits of Willy's claims.

**4.** Section 1441(c) provides:
"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with

"(a) ... any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."[4]

*See Finn v. American Fire & Cas. Co.*, 207 F.2d 113, 115 (5th Cir.1953), *cert. denied*, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954). Here, there is no allegation of diversity of citizenship between the parties; therefore, the propriety of removal depends on whether the case falls within the provisions of 28 U.S.C. § 1331 that: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Section 1331 executes Article III, § 2, of the Constitution, which grants the federal courts the power to hear cases "arising under" the Constitution and federal statutes. Although section 1331 and Article III employ the same "arising under" language, the phrase does not have the same meaning in these different contexts. For constitutional purposes, the case arises under federal law whenever a federal question is an "ingredient" of the cause of action. *Osborn v. Bank of United States*, 9 Wheat. 22 U.S. 738, 823, 6 L.Ed. 204 (1824). Section 1331 "arising under" jurisdiction is more limited, however. *Merrell Dow*, 106 S.Ct. at 3232. *See Fabrique, Inc. v. Corman*, 813 F.2d 725, 725–26 (5th Cir. 1987) (Supreme Court has rejected "ingredient" test for federal question jurisdiction). *See generally* 13B C. Wright, A. Miller, & C. Cooper, *Federal Practice and Procedure* § 3562 (2d ed. 1984) (hereinafter Wright & Miller).

The issue that we address in this case is whether the federal aspect of Willy's state cause of action brings his case

one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

within section 1331's "arising under" boundaries. Defining when a claim arises under federal law has drawn much attention but no simple solutions. *See Powers,* 719 F.2d at 763 & n. 1. *See also Superior Oil Co. v. Pioneer Corp.,* 706 F.2d 603, 605 (5th Cir.1983). Certainly the most often discussed feature of the "arising under" requirement, however, is the well-pleaded complaint rule: whether a claim arises under federal law must be determined from the allegations in the well-pleaded complaint. *See generally* 13B Wright & Miller, § 3566 (2d ed. 1984). In cases removed to federal court, the plaintiff's well-pleaded complaint, not the removal petition, must establish that the case arises under federal law. *See Merrell Dow,* 106 S.Ct. at 3232; *Franchise Tax Board,* 103 S.Ct. at 2847. This rule requires the court to determine federal jurisdiction from only those allegations necessary to state a claim or, stated alternatively, a federal court does not have jurisdiction over a state law claim because of a defense that raises a federal issue, even if the plaintiff anticipates and pleads the federal issue in his complaint. *Franchise Tax Board,* 103 S.Ct. at 2846; *Gully v. First National Bank at Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (case brought in federal court).

### A. Jurisdiction Based on Federal Preemption

■ Under the well-pleaded complaint rule, federal preemption is generally a defensive issue that does not authorize removal of a case to federal court.[5] *See Powers,* 719 F.2d 764–65. However, in

Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists, 390 U.S. 557, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968), the Court tersely held that because state actions for breach of collective bargaining agreements were preempted by section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, the federal court had removal jurisdiction.[6] In *Franchise Tax Board,* 103 S.Ct. at 2853–54, the Court subsequently explained that because "the preemptive force of § 301 is so powerful as to displace entirely" state actions for breach of a collective bargaining agreement, any such action "is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." The Court further stated: "*Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." 103 S.Ct. at 2854.

Nonetheless, *Franchise Tax Board* refused to find federal question jurisdiction based on preemption of a state tax collection action by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA).[7] The Court held that because the state's claims were not within the scope of section 502(a), which is ERISA's civil enforcement provision, they could not be removed to federal court. 103 S.Ct. at 2854–55. In other words, a federal action cannot be found to so completely displace state claims that *Avco* applies unless there would have been a federal cause of action under the preempting federal law.[8] In fact, in *Merrell Dow,* which did

---

**5.** Prior to the amendments to the removal statute in 1887, a federal defense such as preemption could be the basis for removal jurisdiction. *Caterpillar, Inc. v. Williams,* —— U.S. ——, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

**6.** Although section 301 has been held to be an adequate jurisdictional grant, *see, e.g., Textile Workers Union v. Lincoln Mills of Ala.,* 353 U.S. 448, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957), the *Avco* Court found jurisdiction for cases preempted by section 301 under 28 U.S.C. § 1337, which grants federal jurisdiction in actions "arising under any Act of Congress regulat-

ing commerce." There is no distinction, however, between "arising under" standards for section 1337 and section 1331. *See Franchise Tax Board,* 103 S.Ct. at 2845 n. 7.

**7.** The Court assumed ERISA preemption, but did not actually determine that question.

**8.** In *Avco* the plaintiff was denied the injunctive relief that it sought because of independent limits on federal jurisdiction at that time. The *Franchise Tax Board* Court reasoned that the *Avco* plaintiff nevertheless had stated a claim

not directly raise federal preemption as an issue, the Court held that

"a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331." 106 S.Ct. at 3237.

In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court extended the *Avco* rule to a state action that is preempted by ERISA's civil enforcement provision, section 502(a). *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (under section 514(a), section 502(a)(1)(B) completely preempts a state common law claim for improper processing of a claim submitted to an ERISA-qualified plan). In *Taylor*, unlike *Franchise Tax Board*, the claim was within the scope of ERISA's private cause of action. Furthermore, Congress had expressed an explicit intent for actions preempted by section 502(a) to arise under federal law in a "similar fashion to those brought under section 301." 107 S.Ct. at 1547–48. Because of these two factors, the Court found that the action arose under federal law. *Id.* at 1548. *See also Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (claim of right to possession of Indian lands asserts a purely federal right and claim therefore arises under federal law).

It is important to recognize that *Taylor* is a narrow extension of *Avco*, which itself represents a narrow exception to the rule that federal preemption is a defensive issue that does not authorize removal of a case to federal court. *Avco* was an action arising under section 301 of the LMRA. Because of the unique Congressional mandate for a uniform body of federal labor law under the LMRA, several broad preemption doctrines have evolved to protect this fed-

eral interest. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (preemption of state substantive law, but not state court jurisdiction, in breach of duty of fair representation claim); *Amalgamated Ass'n of Street, Electric Railway and Motor·Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (jurisdiction of National Labor Relations Board over unfair labor practices preempts state and federal court jurisdiction); *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1912–16, 85 L.Ed.2d 206 (1985) (state tort action that is "inextricably intertwined with consideration of the terms of" a collective bargaining agreement is preempted by LMRA section 301). *But see Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 1561–62, 51 L.Ed.2d 338 (1977) (discussing cases where state law is not preempted because the activity is only a "peripheral concern of the LMRA" or touches an interest "deeply rooted in local feeling"); *Caterpillar, Inc. v. Williams*, — U.S. ——, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) (section 301 does not preempt state breach of employment contract claim even though there was a collective bargaining agreement in place under which plaintiffs could have brought suit). In cases not implicating the LMRA, we have read the majority and concurring opinions in *Taylor* to require "manifest congressional intent" to make a preempted state claim removable to federal court. *See Beers v. North American Van Lines, Inc.*, 836 F.2d 910, 913 n. 3 (5th Cir.1988) (preemptive effect of Interstate Commerce Act).

 Here, the federal laws [9] to which Willy explicitly refers as an aspect of his *Sabine Pilot*-type claim and the legislative history of those statutes indicate no intent, manifest or otherwise, that *Avco* should apply in this character of case. Thus, under *Taylor*, complete federal preemption or displacement cannot be a basis for removing Willy's case to federal court. In reach-

---

that arose under section 301 of the LMRA. 103 S.Ct. at 2853.

9. Although occasionally mentioning federal securities laws, the parties have focused this appeal on the environmental laws.

ing this conclusion that complete federal preemption or displacement does not provide a basis for federal jurisdiction, we reiterate that we are not determining whether all or any of Willy's state wrongful discharge claim is preempted.[10]

### B. Jurisdiction Based on General "Arising Under" Principles

If complete displacement of state law cannot be the basis of federal question jurisdiction, does the presence of a federal aspect in Willy's state cause of action create federal jurisdiction? With the exception of state actions completely displaced by federal law, the plaintiff is generally "master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and he "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 107 S.Ct. at 2429 & n. 7 (1987) (footnote omitted).[11] Here, of course, Willy in part relies upon federal law and the question remains whether his case therefore arises under federal law.

One answer is found in Justice Holmes' test for federal question jurisdiction: "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Federal jurisdiction is not shown by this test, for Willy alleges an asserted cause of action created by Texas law.

"However, it is well settled that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction. We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law, see, *e.g., Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Hopkins v. Walker*, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917), and even the most ardent proponent of the Holmes test has admitted that it has been rejected as an exclusionary principle, see *Flournoy v. Wiener*, 321 U.S. 253, 270–272, 64 S.Ct. 548, 556–557, 88 L.Ed. 708 (1944) (Frankfurter, J., dissenting)." *Franchise Tax Board*, 103 S.Ct. at 2846.

Following *Franchise Tax Board*, we addressed federal question jurisdiction premised on vindication of a state right that "necessarily turned on some construction of federal law." In *Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 88–89 (5th Cir.1986)

10. We note that state legislation is generally not preempted unless Congress has sufficiently evidenced (either expressly or inferentially through the comprehensiveness of the federal regulatory scheme) an intent to exclude all state regulation in the field or unless state law conflicts with federal law (either because compliance with both is impossible or because state law stands as an obstacle to the accomplishment of the full objectives of Congress). *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Osburn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 911 (5th Cir.1987). The states, of course, are traditional partners with the federal government in the fields of securities and environmental regulation. And the *Sabine Pilot* remedy may sometimes in practice supplement but does not appear to directly conflict with any federal remedy. State remedies may, however, be preempted by federal ones in a given context. *See Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808 (5th Cir.1988) (Longshore and Harbor Workers' Compensation Act preempts state law claim for bad faith refusal to pay benefits due thereunder); *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506 (5th Cir.1985) (Loui- siana law claim for wrongful discharge in retaliation for claim under Longshore and Harbor Workers' Compensation Act inconsistent with section 48a thereof for purposes of the Outer Continental Shelf Lands Act).

11. In *Caterpillar*, the Court explained that the well-pleaded complaint rule makes plaintiff the master of his claim when he wishes to avoid federal jurisdiction. 107 S.Ct. at 2429. The plaintiff's mastery over his complaint gives way to the well-pleaded complaint rule when plaintiff attempts to choose a federal forum based on an anticipated federal defense. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed.2d 126 (1908). *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (no federal jurisdiction over plaintiff's federal declaratory judgment action because federal issue would be a defense in underlying damages or injunction action); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179–83 (5th Cir.1984) (no federal jurisdiction for declaratory judgment as to whether federal statute preempts nonfederal claim).

(on petition for rehearing), we discussed the two cases cited in *Franchise Tax Board* for this proposition, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), and *Hopkins v. Walker*, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917). We read *Hopkins*, a suit to remove a cloud from title originating in a federal patent, as distinguishable from a seemingly inconsistent decision in a quiet title action, *Barnett v. Kunkel*, 264 U.S. 16, 44 S.Ct. 254, 68 L.Ed. 539 (1924), based on traditional distinctions in the pleading requirements for these two actions. We thus found *Hopkins* to have "narrow" applicability. We read *Smith*, a shareholder suit to enjoin investment in bonds allegedly issued under an unconstitutional federal act, as irreconcilable with *Moore v. Chesapeake & Ohio Railway*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934). We found it unnecessary to resolve this dilemma, however, because in neither case did federal law provide a private remedy, and the recently rendered majority opinion in *Merrell Dow*, 106 S.Ct. 3229, required a federal remedy for the statute to be a basis for federal jurisdiction. The *Merrell Dow* Court found *Smith* and *Moore* reconcilable based on the "difference in the nature of the federal issues at stake." 106 S.Ct. at 3236 n. 12. *Merrell Dow* suggested that *Smith* challenged the constitutionality of an important federal statute, whereas *Moore* was simply a state tort action that incorporated a federal standard. *Merrell Dow*, 106 S.Ct. at 3236 n. 12.

Justice Cardozo formulated the other well-recognized test for determining when an action arises under federal law: "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action ... [and] must be such that it will be supported if the Constitution or laws of the United States are given one construction of effect, and defeated if they receive another." *Gully*, 57 S.Ct. at 97. In *Franchise Tax Board*, the Court then explained that the Holmes and Cardozo tests are alternative analyses, though the Court slightly altered the Cardozo essential element language and instead required the well-pleaded complaint to require "resolution of a substantial question of federal law." 103 S.Ct. at 2848, 2856. *See also Fabrique, Inc.*, 813 F.2d at 726.

Defendants argue that the federal statutes to which Willy refers as a feature of his claim raise a substantial issue of federal law, as demonstrated by the private, federal remedy granted by those statutes. However, *Franchise Tax Board* only held that a case *might* arise under federal law when a state claim requires resolution of a substantial question of federal law, and we have interpreted the substantial question test to be a "narrow exception" to the rule that a suit "arises under the law that creates the cause of action." *Oliver*, 796 F.2d at 88. *Merrell Dow* recognizes "that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction" and cites with approval the passage from Justice Frankfurter's dissenting opinion in *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 928, 1 L.Ed.2d 972 (1957), defining the proper test as "the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote." *Merrell Dow*, 106 S.Ct. at 3235 & n. 11. While *Merrell Dow* held that a private, federal remedy was a necessary predicate to determining that the presence of a federal element in a state-created cause of action resulted in that cause of action being one which arose under federal law, it did not hold that the presence of any private, federal remedy would in all instances suffice for that purpose. *See Merrell Dow*, 106 S.Ct. at 3232 (no "single, precise definition" of section 1331 "arising under" jurisdiction), 3235 ("[f]ar from creating some kind of automatic test, *Franchise Tax Board* thus candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction.").

Finally, because *Merrell Dow*, 106 S.Ct. at 3235, and *Franchise Tax Board*, 103 S.Ct. at 2852, relied heavily upon *Gully*, we return in conclusion to its frequently cited passage:

"What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end.... Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by." 57 S.Ct. at 100.

*Cf. Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983) (LMRA does not preempt state law where claim only of peripheral concern to LMRA and deeply rooted in local law); *Farmer,* 97 S.Ct. at 1561–62 (same).

■ Turning to Willy's complaint, we begin with the minimum requirement that the federal statutes involved provide a private, federal remedy. *See Merrell Dow,* 106 S.Ct. at 3234–37; *Oliver,* 796 F.2d at 89. But Willy does not claim that defendants violated the "whistleblower" provisions of the federal statutes.[12] Instead, he pleaded that he was fired for refusing to violate, or seeking to cause his employer to comply with, state and federal reporting requirements. Defendants have not argued that Congress has provided a private, federal cause of action for violation of these federal regulations. Furthermore, the "whistleblower" provisions expressly limit the remedy to an administrative claim with the Secretary; therefore, the district court could not have exercised jurisdiction over Willy's claim if he had originally brought it in federal court under those provisions. *See In re Willy,* 831 F.2d 545, 546 (5th Cir.1987). Just as it would "flout" congressional intent to allow a federal court to exercise federal question jurisdiction over a removed claim for violation of a federal statute that does not provide a private cause of action, *Merrell Dow,* 106 S.Ct. at 3234–35, it would equally flout congressional intent to give the federal court original (and hence removal) jurisdiction based on statutes that limit the federal remedy to an administrative action.[13]

Assuming, however, that the "whistleblower" provisions meet the requirements of *Merrell Dow,* the federal element in Willy's *Sabine Pilot*-type claim is not substantial enough to confer federal question jurisdiction.

We note to begin with that Willy's wrongful discharge claim[14] was predicated on his alleged attempts to cause his employer to comply with, or his refusal to violate, state as well as federal environmental laws and federal securities laws. For example, Willy alleges that he "refused to permit Defendants to continue to operate in violation of the environmental laws of the federal and state governments," that had he "permitted the Defendants to continue to operate in violation of the laws and regulations of the federal and state governments, he would have been in violation of the laws of the United States and the various states, and also not in compliance with the code of ethics governing the actions of lawyers in Texas," and that his

"actions ... also would have required Defendant Coastal ... to report to the U.S. Environmental Protection agency

---

**12.** The parties do not contend that there is a "whistleblower" provision in the securities law and we are aware of none.

**13.** We note that if Willy's activities were wholly intracorporate, *Brown & Root* would take his *Sabine Pilot* claim outside of the scope of the whistleblower provisions. This, however, would only strengthen our conclusion that the district court lacked subject matter jurisdiction.

**14.** Willy's claims other than for wrongful discharge concededly involve no federal aspect.

any non-compliance with the laws and regulations of that agency, and to report to the respective state environmental agencies, any failure to comply with state law and regulations. Among the state agencies to which reporting would have been required was the Texas Department of Water Resources and the Kansas Department of Health and Environment."

He further alleged that "Defendant Coastal would have been required to report these conditions to the investment public and its shareholders in its SEC Form 10K and 10Q." While Willy did not expressly allege why he was fired, the plain inference from his pleading is that he was discharged because of his refusal to violate, or his insistence that his employer comply with, state as well as federal environmental laws and federal securities laws. Willy also alleged in connection with his wrongful discharge claim:

"A contract for employment at will under the laws of the State of Texas prohibits discharge for compliance with the laws of the United States and the various states, including the State of Texas. All actions relevant to this cause of action undertaken by Donald J. Willy were to comply with the laws of the United States and the various states."

Thus, Willy's wrongful discharge claim was supported by alternate theories, first that his discharge was wrongful because it was on account of his attempt to cause employer compliance with or his refusal to violate federal law, and second that it was wrongful because it was on account of his attempt to cause employer compliance with or his refusal to violate state law. Nothing in Willy's state pleading or in the Texas common law as announced in *Sabine Pilot* or otherwise indicates that the first (federal law related) theory is necessary to Willy's wrongful discharge claim or that the second (state law related) theory is not

sufficient of itself and without the first theory.[15]

In its recent decision in *Christianson v. Colt Industries Operating Corp.*, —— U.S. ——, 108 S.Ct. 2166, 100 L.Ed.2d 811 1988) the Court considered an analogous situation in determining whether a claim was one "arising under any Act of Congress relating to patents" for purposes of jurisdiction under 28 U.S.C. § 1338(a). The Court noted that resolution of this question was governed by the same principles that applied in determining "arising under" jurisdiction for purposes of section 1331. *Christianson*, —— U.S. at ——, 108 S.Ct. at 2172–74. It then announced that "a claim supported by alternative theories in the complaint may not form the basis for section 1338 jurisdiction unless patent law is essential to each of these theories," *id.*, and further explained:

"The well-pleaded complaint rule, however, focuses on claims, not theories, see *Franchise Tax Board*, 463 U.S., at 26, and n. 29 [103 S.Ct. at 2855 and n. 29]; *Gully*, 299 U.S., at 117 [57 S.Ct. at 99–100], and just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire monopolization claim 'arises under' patent law." *Id.* —— U.S. at ——, 108 S.Ct. at 2175–76.

The *Christianson* Court proceeded to hold that neither of the two Sherman Act claims there involved, an attempted monopolization claim under section 2 and a group boycott claim under section 1, arose under the patent laws because "[t]he patent-law issue, while arguably necessary to at least one theory under each claim, is not necessary to the overall success of either claim." *Id.* The theory on which the plaintiff actually prevailed in the district court *was* the patent law theory as to each claim, *id.* —— U.S. at ——, 108 S.Ct. at 2170–72, but the Court pointed out that the complaint *also* alleged alternative theories of recovery, not involving patent law, on each of

---

**15.** We do *not* determine that the facts pleaded by Willy are sufficient, under any theory, to state a claim under Texas law; we merely assume, *arguendo only,* that they are. Our point is that *if* they are, there is nothing in either the complaint or any Texas law source to indicate that the first (federal law related) theory is necessary to state a claim and that the second (state law related) is not alone sufficient to do so.

the two claims. *Id.* —— U.S. at ——, 108 S.Ct. at 2175–76. Hence, none of the claims met the section 1338 "arising under" requirement, and accordingly the suit was not one within the district court's section 1338 jurisdiction.

We conclude that the *Christianson* doctrine is properly applied to this case and results in the conclusion that Willy's wrongful discharge claim does not arise under federal law.

Our conclusion in this connection is strengthened by our view that the federal issues in Willy's claim are not ones in the forefront of the case, but are more collateral in nature, and are not substantial in relation to the claim as a whole, which is in essence one under state law. The Texas common law doctrine stated in *Sabine Pilot* is one intended to protect the rights of any employees, and whether the law that they are fired for refusing to violate is state or federal, environmental or otherwise, is wholly immaterial.[16] It is likewise immaterial to the Texas action whether the employee sought to aid a law enforcement agency or to bring to official cognizance violations committed by others. The federal "whistleblower" statutes, by contrast, promote *enforcement* of environmental laws by protecting employees who aid the government enforcement agency. Accordingly, in this Texas common law wrongful discharge case, the role of issues of federal law is more collateral than in the forefront.[17]

Further, other issues of Texas law are substantially implicated in all theories of the wrongful discharge claim. In their motion to dismiss, defendants argued that Willy's ethical obligations as an attorney prohibited him from bringing this action. The Texas Code of Professional Responsibility, DR 2–110(B)(4), requires an attorney to withdraw when discharged by his client; DR 2–110(C)(1) allows an attorney to withdraw if his client intends to pursue an illegal course of action. Tex.Rev.Civ.Stat. Ann., Title 14 App., art. 12, § 8 (Vernon 1973). In either case, DR 4–101(C) prohibits an attorney from revealing confidences without permission except in limited situations not applicable here. Willy argues, on the other hand, that the attorney-client privilege does not allow Coastal to fire him illegally. Tex.Rev.Civ.Stat.Ann., Title 14 App., art. 12, § 8 (Vernon 1973). Thus, the primary legal issues in this case will involve regulation of employment relationships and attorney conduct, both of which are areas deeply rooted in local interest. *See, e.g., Belknap*, 103 S.Ct. at 3183 (employment misrepresentation case). Resolution of these issues in defendants' favor could well mean that the federal issues would never arise.

We conclude that Willy's wrongful discharge claim is not one that "arises under" federal law for purposes of section 1331, and is hence not removable on that basis. We have previously concluded that possible federal preemption does not serve as a ground for removal here. There is no di-

16. *Sabine Pilot* can be reasonably read as restricted to instances where the violations of law the employee refused to commit "carry criminal penalties." 687 S.W.2d at 735. But whether a wrongful discharge action of the *Sabine Pilot* variety will remain so limited by the Texas courts—a matter we do not decide—is an issue the resolution of which would not appear to be affected by whether the law in question is state or federal, environmental or otherwise.

17. Just because a *Sabine Pilot*-type wrongful discharge action might lie in instances where a federal "whistleblower" administrative remedy would also be available does not mean the former regulates the same subject matter as the latter. *Cf. Pilot Life Ins. Co.*, 481 U.S. 41, 107 S.Ct. 1549 at 1553–55, 95 L.Ed.2d 39 (Mississippi common law tort action for bad faith breach of contract, "the roots" of which "are firmly plant-

ed in the general principles of Mississippi tort and contract law" and under which "[a]ny breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages," is not a law "which regulates insurance" within the exception to the preemptive provision of section 514(b)(2)(A) of ERISA "[e]ven though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry"); *Mackey v. Lanier Collections Agency & Service, Inc.*, —— U.S. ——, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (ERISA § 514(a) preempts Georgia statute specifically exempting from garnishment any employee benefit plan subject to ERISA, but does not preempt application of Georgia general garnishment statute to garnish benefit due employee under ERISA welfare benefit plan).

versity. Accordingly, the district court erred in denying Willy's motion to remand, and the judgment below must be reversed with directions to remand the case to the state court. The only remaining issue is that of the Rule 11 sanctions against Willy and his attorney.

## II. Rule 11 Sanctions

On the day that it dismissed Willy's action for failure to state a claim, the district court also awarded $22,625 in attorneys' fees to Coastal as a Rule 11 sanction. The district court viewed Willy's wrongful discharge claim as a legitimate attempt to establish new law, but found that instead of illuminating the issues, he chose to "create a blur of absolute confusion." The district court's primary concern was with a 110-page brief in support of Willy's motion for partial summary judgment. With this brief, Willy filed what the district court described as "a 1,200-page, unindexed, unnumbered, foot-high pile of material which this Court is unable, after examination, to fathom and which is determined to be a conscious and wanton affront to the judicial process, this Court, and opposing counsel." The district court furthermore found that Willy's responses to defendants' motion to dismiss, in which Willy relied in part upon a federal rule of evidence that had not been adopted, were equally confusing. Willy argues both that sanctions were inappropriate and that the amount of the sanction was excessive.

■ We begin by noting that we and the district court retain jurisdiction over the Rule 11 aspect of this case, even though we have held that removal was improper. *See Vatican Shrimp Co. v. Solis*, 820 F.2d 674, 680 n. 7 (5th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987); *News–Texan, Inc. v. City of Garland, Texas*, 814 F.2d 216, 218–20 (5th Cir.1987). As to the propriety of the district court's Rule 11 sanctions, we are guided by our recent en banc opinion in *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 872–73 (5th Cir.1988), where we adopted an abuse of discretion standard of review. Our en banc opinion in *Thomas*

was issued after the case was appealed, and the district court, of course, did not have the benefit of it when imposing sanctions. Under *Thomas*, compliance with Rule 11 is generally judged by an objective standard of reasonableness. *Id.* at 873. Once a district court finds a Rule 11 violation, it must impose *some* sanction. *Id.* at 876. The district court retains broad discretion in fashioning an "appropriate" sanction; however, the sanction imposed should be the least severe that adequately furthers the purposes of Rule 11. *Id.* at 876–78. Reasonable and appropriate expenses, including attorneys' fees, may be awarded as a Rule 11 sanction to the extent that the expenses were reasonably caused by a violation of Rule 11. *Id.* at 878. Actual expenses and attorneys' fees are not necessarily reasonable: "A party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims." *Id.* at 879. Moreover, not all such expenses and fees so caused need be awarded. *See Smith International, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1197 (5th Cir. 1988).

■ Here, the district court clearly did not abuse its discretion in determining that Willy had violated Rule 11. Filing mountainous piles of unorganized documents and citing to nonexistent rules of law are precisely the sort of conduct that, under the objective test of Rule 11, could lead a district court to conclude that the attorney had not made reasonable inquiry into the law or was seeking to harass or delay. And the district court pointed out that its list of conduct that violated Rule 11 was not meant to be comprehensive. As Coastal argued in its motion for sanctions below and on appeal now, Willy's briefs below contain other misleading citations of law.

■ Turning to the sanction imposed, we find the type of sanction appropriate but that the amount of and basis for the sanction must be reconsidered by the district court in light of the standards set out in *Thomas*. Sanctions may be awarded jointly and severally against the client and

his attorney, *see Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1131 (5th Cir.1987); *Southern Leasing Partners Ltd. v. McMullan,* 801 F.2d 783, 789 (5th Cir.1986), and a joint and several award may often be appropriate where, as here, the client is an attorney. Among other things, the court must determine whether its substantial award satisfied the requirement that the fees must have been reasonably incurred *as a result of* a violation of Rule 11 and in light of the duty to mitigate. *Thomas,* 836 F.2d at 878. Defendants submitted affidavits from two law firms: one sought reimbursement for 442 hours at $100 per hour ($44,200) and $2,639 in expenses; the other firm sought reimbursement for 307 hours at $125 an hour ($38,325). Neither firm submitted sufficiently detailed information from which the district court could determine what portion of these fees and expenses were incurred because of Rule 11 violations. Nor did the district court explain how it derived from these amounts its figure of $22,625. As we stated in *Smith International,* 844 F.2d at 1197:

> "While *Thomas* adopted 'a rule ... that does not require specific findings and conclusions by a district court in all Rule 11 cases,' nevertheless we there held that where 'the basis and justification for the trial judge's Rule 11 decision is not readily discernible' some explanation is ordinarily required, though 'the degree and extent to which specific explanation must be contained in the record will vary according with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award.' *Id.* [*Thomas*] at 883. 'If the sanctions imposed are substantial in amount'—as they clearly are here—then 'appellate review of such awards will be inherently more rigorous' and 'such sanctions must be quantifiable with some precision.' *Id.* [*Thomas*]."

Here the sanctions are clearly substantial in amount and the district court's orders in reference to the amount thereof do not meet the foregoing requirements.

The sanctions order is therefore reversed and the matter of sanctions is remanded to the district court for further proceedings consistent with this opinion and *Thomas.* [18]

## CONCLUSION

We hold that this case was improvidently removed and that the district court lacked subject matter jurisdiction over it (except as to Rule 11 sanctions). Accordingly, the judgment below is reversed and remanded to the district court with directions to remand the cause, except for the matter of sanctions, to the state court. We likewise set aside the district court's sanctions order, and that phase of the case is remanded to the district court for further proceedings consistent herewith.

REVERSED AND REMANDED.

HUGHES, District Judge, dissenting in part:

Although I join fully the jurisdictional decision and reasoning, I cannot concur in the portion of the opinion that remands the award of sanctions for further findings.

The process of imposing sanctions has three steps. First, the respondent must be given notice of the abuse for which sanctions are sought. Second, he must have an opportunity to be heard in response. Third, the abuse and the imposition must be supported by the record. The only issue here is the third step, the quantification of the monetary sanction. The majority confuse whether the record supports the findings with whether there are sufficient findings.

The record is not limited to the trial judge's recitations. *Ferguson v. Hill,* 846 F.2d 20 (5th Cir.1988). Failure to articulate the process of the evidence evaluation does not undermine the trial court's judgment. The quantification required some evidence and an answer finding the appropriate level of compensation. If it were a jury issue,

---

**18.** We also note that "Rule 11 does not apply to conduct that occurred in state court before removal." *Foval v. First National Bank of Commerce in New Orleans,* 841 F.2d 126, 130 (5th Cir.1988).

the question on appeal would be whether the one answer had sufficient evidence in the record to support the amount.

The testimony that is in the record consists of affidavits from the defendants' lawyers describing in some detail and some generality the time and efforts expended in the whole case. The fee total was $82,575. The trial court did not accept that evidence uncritically; he obviously discounted it by about 83%, awarding $22,625. The record is more than the fee affidavits and the judge's findings. Fed.Rule of App.Pro. 10(a). We must presume that the trial court considered the course of the litigation represented by the pleadings, motions, hearings, docket entries, briefs, and other filed papers.

Although the abuses of the plaintiff and his counsel were pervasive, the record is weak on causation, but just because I would find the amount resulting from the abuses to be a lot less does not amount to an absence of either sufficiently specific findings or of evidence in the record itself. *Anderson v. City of Bessemer*, 470 U.S. 564, 576, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985).

The people on whom the sanction was imposed here were content to leave the record in the state we find it. It supports the judgment. They were under a duty to contradict the evidence of amount and to supply evidence of justification. They did not. This case involves neither a default nor unrepresented parties, which would be instances that may require a trial or appellate judge to use a vigorous skepticism.

On appeal, our choices are limited: If we cannot hold that the value was clearly erroneous on the evidence, we are obliged to affirm.