### Wilfredo JARANILLA

v.

### MEGASEA MARITIME LTD., Pankar Maritime S.A., Greece and Kouros Maritime Enterprises

### No. 01–1449.

United States District Court, E.D. Louisiana.

Oct. 12, 2001.

Richard J. Dodson, Kenneth H. Hooks, III, Law Office of Richard J. Dodson, APLC, Baton Rouge, LA, Philip Francis Cossich, Jr., Cossich, Martin, Sumich & Parsiola, Belle Chasse, LA, for Plaintiff.

David B. Lawton, Terriberry, Carroll & Yancy Energy Centre, New Orleans, LA, for Defendants.

### MINUTE ENTRY

BARBIER, District Judge.

The Court heard oral argument on the Plaintiff's **Motion to Remand (Rec.Doc. 2)** on June 20, 2001. Defendants, Megasea Maritime Ltd., the owner of M/V KOUROS V, and Pankar Maritime S.A., the manager of M/V KOUROS V, opposed the

---

motion. For the reasons that follow, the Court **GRANTED** Plaintiff's motion and remanded the case to 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.[1]

## BACKGROUND

On January 20, 2000, Plaintiff, Wilfredo Jaranilla, a Philippine seaman, joined the crew of Defendant Megasea's Maltese-flagged vessel, M/V KOUROS V, while the vessel was in Taiwan. On April 16, 2000, while the vessel was in Piraeus, Greece, Plaintiff was severely burned as a result of an electrical explosion on the ship. Plaintiff's burns were initially treated at a hospital in Greece, and he was later transported to the Philippines for additional medical care.

On February 26, 2001, Plaintiff filed suit in the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana, seeking damages pursuant to the Jones Act, general maritime law, and applicable foreign law. Plaintiff established jurisdiction over Defendants by executing a writ of non-resident attachment against their vessel when it entered waters within the court's jurisdiction.[2]

Before Plaintiff joined the crew on the M/V KOUROS in Taiwan, he signed employment contracts with Defendants, which Defendants allege contain agreements to arbitrate all disputes before the Philippine National Labor Relations Commission.[3] On May 11, 2001, Defendants removed the action to this Court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, arguing that the employment contract contained an international agreement to arbitrate, and, therefore, the articles of the Convention governed the dispute. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *adopted by the U.S.* Dec. 29, 1970, art. I, 9 U.S.C. § 201 ("Convention"). Defendants also point to Section 205 of the Convention, which allows a defendant to remove an action to a federal district court before the start of trial when the dispute relates to an arbitration agreement or award covered by the Convention. 9 U.S.C. § 205.

Thereafter, Plaintiff moved to remand the case. (Rec.Doc. 2).

## DISCUSSION

■ The party removing the action bears the burden of demonstrating that removal is proper. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). In the case at bar, Defendants must establish that the Convention actually gives this Court subject matter jurisdiction over the action. Ultimately, Defendants must show that the Convention as ratified by the United States covered employment contracts of seamen. *See* 9 U.S.C. § 205.

In 1924, Congress enacted Chapter One of Title IX of the United States Code, which covers arbitration; Chapter One is commonly referred to as the Federal Arbitration Act ("FAA"), as it contains laws which govern domestic arbitration. Section One of the FAA (" 'Maritime transactions' and 'commerce' defined; exceptions to operation of title"), provides:

"Maritime transactions", as herein defined, means charter parties, bills of

---

1. At the request of a party to this litigation, the Court is issuing these written reasons, which are in accordance with the Court's oral reasons given at the hearing on this matter.

2. None of the parties are citizens of the United States.

3. The parties dispute whether the contracts actually compelled the parties to arbitrate. However, this Court does not need to resolve this issue to reach its conclusion. As discussed herein, the terms of the contracts cannot be litigated in this Court because this Court lacks subject matter jurisdiction.

lading of water carriers, agreements relative to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, . . . but nothing herein contained shall apply to contracts of employment of seamen, railroad workers or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1 (1999) (emphasis added).

Chapter Two contains the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 201, *et seq.* The Convention provides much broader coverage than the FAA, and it explicitly applies to any award not considered domestic by the nation where enforcement is sought. Convention, *supra,* art. I, 9 U.S.C. § 201. Article One of the Convention provides a state the right to apply the Convention only to legal relationships that the state considers "commercial" under its national laws. *Id.* at sec. 3. When adopting the Convention, the United States exercised that right by declaring that:

[t]he United States of America will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the United States.

*Id.* at n. 29 (emphasis added).

■ Based on the plain language of the FAA and the Convention, the Court concludes that United States arbitration law specifically excludes seafarers' contracts of employment from the scope of commercial contracts. 9 U.S.C. § 1. The exception in section One of the FAA, which removes seamen's employment contracts from the scope of commercial contracts, applies to the *entire title* governing arbitration, not just the FAA. Because the Convention is part of Title IX, the exception applies to the Convention as adopted by the United States. Furthermore, section 208 of Chapter Two specifically incorporates the FAA into the Convention to the extent that the FAA does not conflict with the Convention. 9 U.S.C. § 208. This incorporation would include the "seamen contract exception." As a result, the seamen's employment contract exception cannot conflict with the Convention, because it must be read *into* the Convention as adopted by the United States.

While the Court finds that the plain language of the Convention and statute support the conclusion that the seaman's employment contract at issue is not a commercial contract, if any ambiguity did exist as to the definition of "commercial" in the Convention, the legislative history of Congress's enactment of the Convention also offers clear evidence that section One of the FAA defines "commercial" for the Convention.[4] Testimony before the Com-

---

4. The Court is aware of previous decisions rendered by other members of this Court reaching opposite conclusions based on the plain language of the statutes involved. *See Lejano v. K.S. Bandak,* Civ. A. No. 00–2990, 2000 WL 33416866 (E.D.La. Nov. 3, 2000) (Feldman, J.); *Francisco v. M/T STOLT ACHIEVEMENT,* 2001 WL 290172 (E.D.La., Mar. 23, 2001) (Vance, J.). In *Lejano,* the Court refused to consider the applicable legislative history after finding that the terms of the statutes were clear and unambiguous. This Court agrees that generally legislative history need not be considered when a statute as written is clear. However, because the Court in the instant case also finds that the statutes' terms are clear, but reaches an opposite conclusion with respect to the meaning of the statutes, a consideration of the legislative history is both pertinent and instructive to the Court's analysis.

mittee on Foreign Relations at the hearing on Senate Bill 3274, which enacted the Convention, clearly indicated that section One of the FAA defined United States commercial law for the purposes of the Convention. S.Rep. No. 91–702, at 6 (1970).[5] The result is that seamen's employment contracts are not subject to the law of the Convention as they are not "commercial" in nature.

The Court, therefore, concludes that the Convention as ratified by the United States does not apply to employment contracts of seaman, as such contracts are not "commercial under the national law of the United States." Accordingly, the Court orders that this case be remanded to the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana for lack of federal question subject matter jurisdiction.[6]

---

**5.** Richard D. Kearney, Chairman of the Secretary of State's Advisory Committee on Private International Law, testified that "[i]t was not, of course, necessary to make any reference to the national law of the United States in the first sentence of section 202 [of the Convention] because the definition of commerce contained in section 1 of the original Arbitration Act [9 U.S.C. § 1] is the national law definition for purposes of the declaration." S.Rep. No. 91–702, at 6 (1970).

**6.** The order remanding the case was entered on June 20, 2001.