**Armand and Barbara CYR, et al., Plaintiffs,**

v.

**KAISER FOUNDATION HEALTH PLAN OF TEXAS, et al., Defendants.**

No. 4:98–CV–430–A.

United States District Court, N.D. Texas, Fort Worth Division.

July 16, 1998.

George Parker Young, Friedman Young & Suder, Fort Worth, TX, Elizabeth H. Kilbride, Law Office of Elizabeth H. Kilbride, Houston, TX, for Armand Cyr, Barbara Cyr.

Daniel R. Barrett, Fielding Barrett & Taylor, George Parker Young, Friedman Young & Suder, Fort Worth, TX, for Elaine Lacker.

John Anthony Scully, Paige Ann Lueking, Cooper Aldous & Scully, Dallas, TX, for Kaiser Foundation Health Plan of Texas, Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals.

Max Edward Freeman, II, Gwinn & Roby, Dallas, TX for Permanente Medical Ass'n of Texas.

**558**

*MEMORANDUM OPINION and ORDER*

McBRYDE, District Judge.

Before the court for decision is the motion to remand filed by plaintiffs, Armand Cyr and Barbara Cyr (the "Cyrs") and Jason Lacker, Elaine Lacker, individually and as administratrix of the estate of Robert Lacker, deceased, and Jennifer Lacker and Jacqueline Lacker, appearing through Elaine Lacker as their next friend (the "Lackers"). The court has concluded that the motion to remand should be granted.

## I.

*Background and Procedural History*

### A. *The Removal:*

This action was removed to this court from the District Court of Tarrant County, Texas, 96th Judicial District, by notice of removal filed May 14, 1998, by defendants Kaiser Foundation Health Plan of Texas ("Kaiser–Texas"), Kaiser Foundation Health Plan, Inc., ("Kaiser–California"), and Kaiser Foundation Hospitals ("Kaiser–Hospitals"). The remaining defendant, Permanente Medical Association of Texas ("PMAT"), consented to, and joined in, the removal.

Defendants allege that: (1) this court has subject matter jurisdiction under 28 U.S.C. § 1331 because one or more of the claims asserted by plaintiffs arise under the laws of the United States;[1] (2) one or more of the claims of the Cyrs are within the scope of the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), are preempted and displaced by ERISA, and, therefore, arise under federal law and are removable under 28 U.S.C. § 1441(a) and (b); (3) the claims asserted by the Lackers present controversies involving the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–14, which are governed exclusively by federal common law, and, therefore, are removable; and (4) one or more defendants were persons acting, in reference to the claims of the Lackers, under an

officer of an agency of the United States, within the meaning of 28 U.S.C. § 1442(a)(1), thus making the case removable.

Defendants maintain that the court has supplemental jurisdiction over any claim asserted by any plaintiff that does not independently of the other claims provide a basis for subject matter jurisdiction, *see* 28 U.S.C. § 1367(a), and that any claim that otherwise would not be removable is removable under 28 U.S.C. § 1441(c).

### B. *The Claims Alleged by Plaintiffs in the State Court:*

As an employee of Sears Merchandise Group ("Sears"), Armand Cyr ("Mr.Cyr") was a participant in a health plan existing for the benefit of the employees of Sears and their dependents. Barbara Cyr ("Ms.Cyr"), as Mr. Cyr's spouse, was a beneficiary under the plan. The claims of the Cyrs arise from conduct of one or more defendants related to treatment of Ms. Cyr through the health plan. According to the Cyrs, when defendants[2] were providing medical care, treatment, and diagnostic services to Ms. Cyr pursuant to the plan, they failed to properly diagnose and treat a serious physical ailment suffered by her. Ms. Cyr seeks to recover damages for her past and future pain and suffering, mental anguish, emotional distress, and trauma arising from her allegedly improper care and treatment; and Mr. Cyr seeks to recover damages for the losses of companionship, care, support, services, advice, and counsel he alleges he suffered by reason of his wife's improper care and treatment.

Robert Lacker ("Mr.Lacker"), now deceased, was the husband of plaintiff Elaine Lacker ("Ms.Lacker") and the father of plaintiffs Jason Lacker, Jennifer Lacker, and Jacqueline Lacker. Ms. Lacker was an employee of the federal government. The Office of Personnel Management ("OPM") provided a health plan for the benefit of government employees and their dependents,

---

1. Title 29 U.S.C. § 1132(e)(1) is asserted as another basis for subject matter jurisdiction over the claims of the Cyrs.

2. Often plaintiffs fail in their pleading to distinguish between defendants in their allegations of wrongful conduct.

including Mr. Lacker. The Lackers complain that Mr. Lacker's death resulted from the failure of one or more defendants to provide him proper care and treatment pursuant to the plan. They seek to recover the damages that typically are claimed in a wrongful death action—mental anguish, emotional distress, and loss of companionship, care, support, services, advice, counsel, and inheritance suffered by each of them by reason of Mr. Lacker's death.

A distillation of the prolix allegations of plaintiffs' 61–page state-court pleading (titled "First Amended Petition") discloses that plaintiffs are asserting four causes of action against defendants. *First*, plaintiffs claim that their damages were caused by the negligence of defendants other than Kaiser–Hospitals in relation to the care and treatment of Barbara Cyr and Robert Lacker, respectively. *Second*, they allege that defendants are liable to them by reason of violations of the Texas Commercial Bribery Statute, Tex. Pen.Code Ann. § 32.43 (West 1994), which, *inter alia*, provides that a physician commits an offense if, without the consent of his patient, he knowingly or intentionally solicits, accepts, or agrees to accept any benefit from any other person on agreement or understanding that the benefit will influence the physician's conduct in relation to the affairs of his patient, and that a person commits an offense if he offers, confers, or agrees to confer any benefit the acceptance of which is an offense under the statute. The *third* and *fourth* causes of action are that defendants "through violations of the Texas Commercial Bribery Statute engaged in fraudulent concealment and tortious interference with the physician/patient relationship ...." First Amended Petition at 51.

Plaintiffs devote seven pages of their pleading to allegations of specific conduct on the part of defendants other than Kaiser–Hospitals that they claim constituted negligence which caused plaintiffs to suffer damages. *Id.* at 38–44. After noting that Kaiser–Texas "participates in, and indeed controls, the quality assurance process, undertaking to 'supervise' and monitor the quality of medical care provided by the Kaiser/PMAT doctors and Kaiser physician's assistants," plaintiffs allege that Kaiser–Texas was negligent in the following respects:

a. Failure to provide adequate policies to facilitate the ordering of the proper diagnostic tests for Barbara Cyr;

b. Failure to provide adequately trained and/or skilled health care providers to properly diagnose and treat Barbara Cyr's cardiac condition;

c. Failure to provide adequately trained and/or skilled health care and medical care providers to treat Barbara Cyr;

d. Failure to have adequate policies with respect to the medical treatment, medical testing and/or referral of patients with medical symptoms/conditions like Barbara Cyr's;

e. Failure to have adequate quality assurance medical systems in place;

f. Failure to have measures in place to see that Barbara Cyr was sent to the nearest emergency room or cardiac ICU;

g. Failure to provide adequate referral services, which would have made a cardiac specialist available to Barbara Cyr;

h. Failure to provide adequate policies to facilitate the ordering of the proper diagnostic tests for Robert Lacker;

i. Failure to provide adequately trained and/or skilled health care providers to properly diagnose and treat Robert Lacker's cardiac condition;

j. Failure to provide adequately trained and/or skilled health care and medical care providers to treat Robert Lacker;

k. Failure to have adequate policies with respect to the medical treatment, medical testing and/or referral of patients with medical symptoms/conditions like Robert Lacker's;

l. Failure to have adequate quality assurance medical systems in place;

m. Failure to have measures in place to see that Robert Lacker received a stress test;

n. Failure to have measures in place to see that Robert Lacker received a cardiac catheterization; and

o. Failure to have measures in place to see that Robert Lacker received adequate treatment options, such as counseling, evaluation for and receipt of a possible heart transplant.

*Id.* at 38–39. Next, plaintiffs allege that Kaiser–Texas was negligent in proximately causing the failure to diagnose Barbara Cyr's cardiac condition and Robert Lacker's need for a heart transplant. *Id.* at 39. Plaintiffs then allege that Kaiser–Texas, through a medical care program it created and maintained, was guilty of the following negligent conduct:

a. Financially discouraged doctors, medical advice nurses, physicians [sic] assistants, and other providers from providing necessary medical services, including but not limited to medical testing, outside referrals, emergency room treatment and early necessary hospitalization;

b. Inadequate screening and credentialing of doctors, medical advice nurses and physicians [sic] assistants hired;

c. Fostered inadequate training of health care and medical care providers;

d. Inappropriately penalizing treating physicians for ordering testing or specialist referrals necessary for the proper diagnosis and provision of necessary medical services;

e. Failed to provide proper incentives to insure quality medical services are provided to members;

f. Failed to establish and enforce an effective quality control and medical care program; and

g. Establishing incentives for doctors and managers to meet budgets, but not to provide quality health care.

*Id.* at 40. PMAT is charged by plaintiffs with the following negligent conduct:

a. Failure to order the proper diagnostic tests;

b. Failure to properly diagnose Barbara Cyr's and Robert Lacker's cardiac conditions;

c. Failure to provide adequately trained and/or skilled health care and medical care providers to treat Barbara Cyr and Robert Lacker in an adequate number;

d. Failure to have adequate medical care policies with respect to the treatment and/or referral of patients with symptoms/conditions like Barbara Cyr's and Robert Lacker's;

e. Failure to adequately screen and credential doctors hired;

f. Entering into financial arrangements which discouraged adequate medical treatment, including but not limited to emergency room, specialist and chest pain treatment, but encouraged the meeting of budgets to save Kaiser Permanente money;

g. Failure to maintain continuity of medical care; and

h. Failure to have an effective medical quality assurance process which would have prevented the outcome in Barbara Cyr's and Robert Lacker's cases.

*Id.* at 40–41. Kaiser–California is charged with the following negligent conduct:

a. Purporting to but failing to establish an adequate medical quality assurance and medical quality control program;

b. Purporting to but failing to establish an adequate system of hiring and adequately credentialing physicians;

c. Purporting to but failing to adequately supervise the quality of medical care and medical treatment provided to members;

d. Perpetrating false, misleading and deceptive representations and business practices regarding the quality of medical care and medical services

provided to members, as set forth further herein;

e. Creating and fostering an environment which perpetrated negligent conduct, including but not limited to adopting programs which created financial disincentives for adequate medical care;

f. Failing to establish a medical care system with continuity of medical treatment for plan/patient members;

g. Failing to insure Kaiser–Texas and PMAT have sufficient, adequately trained physicians;

h. Failing to insure Kaiser–Texas and PMAT have a credible, functioning medical quality assurance system;

i. Failing to insure Kaiser–Texas and PMAT have a credible, functioning medical peer review system; and

j. Failure to insure the provision of adequately trained and/or skilled health care providers to properly diagnose and treat Barbara Cyr's and Robert Lacker's cardiac conditions.

*Id.* at 42–43. Plaintiffs also charge Kaiser–California with negligence in causing the failure to accurately diagnose and treat cardiac conditions suffered by Barbara Cyr and Robert Lacker by establishing arrangements that:

a. Financially discouraged doctors from providing necessary medical services, including but not limited to medical testing, outside medical referrals, early and necessary hospitalization;

b. Allowed inadequate screening and credentialing of doctors hired;

c. Fostered inadequate training of health care and medical care providers;

d. Created an environment which perpetuated negligent medical conduct and medical treatment of members;

e. Created a system which discouraged adequate medical treatment due to the number of approvals necessary for medical treatment, medical test-

ing and examination specialists, and for admission to the hospital;

f. Penalized treating physicians for ordering necessary medical testing for the proper diagnosis and provision of necessary medical services; and

g. Failed to provide proper incentives to insure necessary medical care were provided to members.

*Id.* at 43–44.

Plaintiffs' pleading contains a series of allegations that appear to be expressions of theories by which plaintiffs maintain that one or more defendants can be held liable for the conduct of another or other defendants and for the conduct of doctors who treated Barbara Cyr and Robert Lacker as part of the services rendered by one or more defendants to them pursuant to the respective health plans referenced in the pleading. These theories are characterized in the pleading as: (a) "Kaiser–California and Kaiser Hospitals Control Kaiser–Texas," *id.* at 33; (b) "Joint Enterprise and Partnership," *id.* at 44; (c) "Single Business Enterprise," *id.* at 45; (d) "Respondeat Superior—Kaiser–California, Kaiser–Texas, Kaiser Hospitals and PMAT," *id.* at 46; (e) "Ostensible Agency and Agency by Estoppel," *id.* at 48; (f) "Partnership/Joint Venture Liability," *id.* at 47; (g) "Piercing the Corporate Veil and Disregarding the Corporate Fiction," *id.* at 51; (h) "Guaranty and Indemnity Liability," *id.* at 52; and (i) "Fraudulent Transfer," *id.*

Under the heading "Pattern and Practice: Other Failures by Kaiser Permanente to Diagnose and Treat Members With Cardiac Chest Pain," plaintiffs devote several pages of their pleading to a discussion of other instances when, according to plaintiffs, one or more defendants failed to provide proper health care to persons. Under this same heading there are allegations concerning patterns and practices of one or more defendants, including allegations concerning continued quality problems and failure to perform quality review. The court does not read any of the allegations under this heading to state a cause of action. Rather, these allegations appear to be a recitation in the pleading of facts that might be used as evi-

dence in support of the negligence causes of action.

In the concluding paragraph of the body of the pleading, plaintiffs allege that they "are making *no* claims for the value of plan benefits which could be characterized as denied or found by Kaiser Permanente as 'not covered' under the Kaiser Permanente Plan." *Id.* at 58.

## C. *The Motion to Remand:*

Plaintiffs characterize their action as "a medical malpractice action attacking the inadequate quality of care provided by Defendants," Plaintiffs' Motion to Remand at 2; and they explain that they "make no claim for denial of benefits," *id.* They maintain that their "state law claims do not 'relate to' or have a 'connection with' an ERISA or FEHBA plan and are not preempted by either ERISA or FEHBA." *Id.* Plaintiffs argue that they "attack the *quality* of benefits received, the negligent acts of Defendants in their medical decisions, diagnosis [sic] and treatment, and the failure of Defendants to provide, arrange for, or supervise qualified doctors providing medical treatment to the members of the plan." *Id.* at 6.

## D. *Defendants' Response to the Motion to Remand:*

Defendants' response to the motion to remand purports to provide information relative to the two health plans at issue. Documents accompanying the response as exhibits are represented to be copies of the health plans through which Ms. Cyr and Mr. Lacker, respectively, received the health care about which the plaintiffs are complaining.

After a question was raised concerning the document that was represented to be an ERISA plan applicable to the claims of the Cyrs, defendants Kaiser–Texas, Kaiser–California, and Kaiser–Hospitals filed a supplemental response to the motion to remand, which was accompanied by additional documents, including a copy of a summary plan description that appears to be related to an ERISA health plan covering employees of Sears.

## II.

### *The Health Plans in Question*

#### A. *The Health Plan Applicable to the Claims of the Cyrs:*

The documents submitted to the court do not make clear the exact nature of the plan on which defendants Kaiser–Texas, Kaiser–California, and Kaiser–Hospitals rely in support of their contention that there is a welfare plan that preempts the claims of the Cyrs.

The initial response to the motion to remand was accompanied by an exhibit that was represented to be an ERISA plan through which Ms. Cyr received the allegedly inadequate health care. It is an agreement between Sears and Kaiser–Texas ("Sears/Kaiser–Texas Agreement"). The main body of the agreement, which bears the title "Service Agreement & Benefit Schedule for Group Coverage," consists of 35 pages, plus a cover page and a table of contents, and is in two sections, one bearing the title "Group Medical and Hospital Service Agreement" ("Service Agreement") and the other bearing the title "Group Benefit Schedule" ("Benefit Schedule"). Under the subheading "Introduction," the Service Agreement starts with the following language:

This Group Medical and Hospital Service Agreement ("Agreement") has been issued by [Kaiser–Texas], a federally qualified health maintenance organization. [Kaiser–Texas], in consideration of the monthly payments to be paid to [it] by [Sears] and in consideration of the Copayments to be paid by or on behalf of Members, agrees to arrange necessary Medical and Hospital Services and other benefits as specified in the Benefit Schedule and any attachments hereto for eligible persons who enroll hereunder, in accord with the terms, conditions, limitations and exclusions of this Agreement.

Service Agreement & Benefit Schedule for Group Coverage at 1. The term "Member" is defined to mean any "Subscriber or Family Dependent," *id.* at 2, which, in turn, are defined to mean, *inter alia,* an employee of Sears and such an employee's wife, *id.* at 3. Kaiser–Texas is referred to throughout the

document as "Health Plan," and Sears is referred to throughout the document as "Group." *Id.* at 1–2.

Under the subheading in the Service Agreement titled "Interpretation of Agreement," the following explanation is given:

> In order to provide the advantages of integrated medical services and facilities, [Kaiser–Texas] arranges and provides services directly rather than paying for services provided by others. The interpretation of this Agreement is guided by the direct service nature of the [Kaiser–Texas] program.
>
> [Kaiser–Texas] is a named fiduciary to review claims under this Agreement. [Sears] delegates to [Kaiser–Texas] the discretion to determine whether a Member is entitled to the benefits of this Agreement. In making these determinations, [Kaiser–Texas] has authority to review claims in accord with the procedures contained herein and to construe this Agreement to determine if the Member is entitled to its benefits.

*Id.* at 1.

Under the subheading "Group Benefit Schedule," there is the following language:

> Subject to all terms and conditions in the foregoing Service Agreement, Members are entitled to the Medical and Hospital Services and other Medically Necessary benefits set forth in this Benefit Schedule, upon payment of specified Copayments.

*Id.* at 18. The Benefit Schedule describes in broad categories the kinds of medical services that are to be provided pursuant to the plan, such as medical services while the person is a hospital patient, outpatient medical services, care in a skilled nursing facility, hospital care, house calls, laboratory and radiology services, *et cetera*.

When a question arose during a telephone conference between the court and the attorneys on June 24, 1998, as to whether the Sears/Kaiser–Texas Agreement actually is the health plan that provided benefits for Ms. Cyr, counsel for defendants Kaiser–Texas, Kaiser–California, and Kaiser–Hospitals agreed to obtain and file verification by an affidavit of a Sears official of the text of the Sears ERISA welfare plan in question. *See* Transcript of Proceedings of June 24, 1998, at 9–11. On June 29, 1998, those defendants filed a supplemental response to the motion to remand along with another group of exhibits. They include an affidavit of Marcia Dalton, who identified herself as an employee of Sears who serves as Manager of Benefits Administration. Beyond that, the affidavit provides precious little information. It says that Sears offers an employee benefit program to eligible employees, which includes plans that provide health insurance. However, the affidavit does not identify any particular program or plan by reference to an attached document or by any other means. Another sentence in the affidavit says that Sears offers various types of health insurance plans from which its employees can select, and that one of the plans available to employees living in certain areas of Texas is Kaiser Foundation Health Plan of Texas. Again, there is no reference to a particular document, nor is there any indication that the plan to which Ms. Dalton referred is one involved in this litigation. Another exhibit is described as "[a] true and correct copy of the Summary Plan Description, attached to the Affidavit of Marcia Dalton as 'Exhibit A–1.'" Defendants' Supplemental Response to Motion to Remand at 2. But, Ms. Dalton's affidavit does not mention the attached document, nor is there any explanation as to why the document was presented to the court for consideration. The text of the document indicates that it is a summary plan description of an ERISA welfare plan, known as "HealthCare Alliance Plan," provided by Sears for the benefit of its employees.

A very broad description of the benefits provided by the HealthCare Alliance Plan is given as follows:

> The HealthCare Alliance Plan provides two alternative levels of benefits. The two levels of benefits provided by the Plan are called In–Network and Out–of–Network. You choose between these levels of benefits each time you obtain medical care. Benefits are described on pages 11—21. If you initially seek care from your Primary Care Physician and obtain care from other providers only as arranged by your

Primary Care Physician, you will have chosen In–Network benefits. When you obtain care that is not arranged by your Primary Care Physician, you will have chosen Out-of-Network benefits.

Exhibit List to Defendants' Supplemental Response to Plaintiffs' Motion to Remand, Exhibit A–1 at 6. The descriptions in the document of "In–Network" and "Out-of-Network" benefits do not appear to include benefits that would be provided by the Sears/Kaiser–Texas Agreement.

Also accompanying the supplemental response is a document that is described as "[a] true and correct copy of Sears' 1996 Form 5500 filed with the Department of Labor, attached to the Affidavit of Marcia Dalton as 'Exhibit A–2.'" Defendants' Supplemental Response to Motion to Remand at 2. Again, no mention of Exhibit A–2 was made in Ms. Dalton's affidavit, with the result that the court is left to speculate as to the relevance, if any, of the document to this litigation. The document names as an insurance contract related to a Sears welfare plan, "Kaiser Health Plan of TX."

On page 44 of the HealthCare Alliance Plan the following explanation is given under the heading "The HMO Option":

The following rules apply if a Health Maintenance Organization (HMO) program is offered by your employer for persons who live in the HMO service area.

You cannot be enrolled in that HMO and under the Plan at the same time.

Exhibit List to Defendants' Supplemental Response to Plaintiffs' Motion to Remand, Exhibit A–1 at 44.

The court is assuming that the program created by the Sears/Kaiser–Texas Agreement is an HMO program within the contemplation of the language quoted immediately above, and that Mr. Cyr was enrolled in that program rather than the HealthCare Alliance Plan at all times pertinent to this litigation, with the result that the Sears/Kaiser–Texas Agreement defines the benefit rights of Ms. Cyr during pertinent times. Statements

made by Larry Young in his affidavit seem to bear out these assumptions. Exhibit List in Support of Defendants' Response to Plaintiffs' Motion to Remand, Exhibit B at 2–3. For the purposes of this opinion, the court is disregarding the HealthCare Alliance Plan and is treating the Sears/Kaiser–Texas Agreement as an ERISA welfare plan that provided health benefits to Ms. Cyr, as the spouse of an employee of Sears, during pertinent times.

Other documents that accompanied Defendants' Supplemental Response to Motion to Remand appear to be copies of agreements between various Kaiser entities pertaining to services to be rendered by Kaiser–Hospitals and PMAT to persons who are entitled to receive, and have sought, medical services through, *inter alia*, the Sears/Kaiser–Texas Agreement. Basically, they contemplate that PMAT has the responsibility to provide the physicians services that are necessary for Kaiser–Texas to fulfill its obligations as to physician services under the Sears/Kaiser–Texas Agreement, and that Kaiser–Hospitals has the responsibility to do the same thing as to hospital services.

B. *The Health Plan Applicable to the Claims of the Lackers:*

The parties have agreed that the item attached to the Affidavit of Larry Young as Exhibit 2 is a copy of the health plan that provided health benefits to Mr. Lacker through his wife's employment with the federal government.[3] Also, the parties are in agreement that the plan was one created and provided by the government pursuant to the provisions of FEHBA. The document reflects that the health care plan is in the nature of a contract between Kaiser–Texas and OPM.

Buried down in the hundred or so pages that make up the health plan is a subdocument that appears to be the text of a brochure that would be provided to government employee-participants in the plan, and their

---

**3.** An additional copy of the plan was provided with an item filed by certain of defendants on June 25, 1998.

beneficiaries.[4] It discloses that the scheme of the health plan is basically the same as the plan that is applicable to the claims of the Cyrs. On the seventh page of the brochure the following explanation is given:

> This Plan is a comprehensive medical plan, sometimes called a Health Maintenance Organization or HMO. When you enroll in an HMO, you are joining an organized system of health care that arranges in advance with specific doctors and hospitals to give care to members and pays them directly for their services. Benefits are available only from Plan providers except during a medical emergency. Members are required to select a personal doctor from among participating Plan primary care doctors. Services of a specialty care doctor can only be received by referral from a Plan primary care doctor. There are no claim forms when Plan doctors are used.

> Because the Plan both provides your care and pays the cost, it seeks efficient and effective delivery of health services. By controlling unnecessary or inappropriate care, it can afford to offer a comprehensive range of benefits.

Twenty pages further into the document is a section titled "Disputed claims review", with subsections headed "Plan reconsideration" and "OPM review" under which procedures are prescribed for the processing of a claim for payment or services if it has been denied by the plan. Basically, the scheme is that the claim must first be presented to the plan, with a right to request a review by OPM if the claim is denied and with the further right to bring a lawsuit "to recover on a claim for this Plan's benefits" if OPM denies the claim. The document goes on to provide that if such a lawsuit is brought, it must be brought against OPM within a specified period of time from the date of denial of the claim and that federal law exclusively governs all claims for relief in such a lawsuit. Judicial action on any such claim is limited to the record that was before OPM when it rendered its decision affirming the denial of the benefits.

### III.

### Analysis

**A. Defendants Have the Burden to Establish Entitlement to Removal:**

■ The party invoking federal court removal jurisdiction bears the burden of establishing federal court jurisdiction over the state court suit. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns . . . ." *Carpenter*, 44 F.3d at 365. Therefore, strict construction of the removal statute is mandated. *Id.* at 366. When removal is sought under 28 U.S.C. § 1441(b), as it is in the instant action, the right of removal depends on the existence of a claim or claims within the federal question jurisdiction of the district courts— actions arising under the Constitution, laws, or treaties of the United States. *Id.* Remand is the proper course if there is any doubt about the existence of jurisdiction. *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1341 (S.D.Tex.1995).

■ Whether federal question jurisdiction exists is determined under the "well-pleaded complaint" rule. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). That is, the existence of federal question jurisdiction is determined solely from what appears on the face of the plaintiff's complaint. *Id.* at 10, 103 S.Ct. 2841; *Willy*, 855 F.2d at 1165. "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both

---

**4.** A more complex health benefit document would be difficult to imagine. It consists of any number of subdocuments, including a 60–page subdocument that appears, for the most part, to be the kind of boilerplate that would be put in any contract to which the government is a party.

In addition, there are other separate subdocuments that appear to set forth various government regulations, guidelines, and rules governing the activities of a health care provider who has entered into a health care contract with the government.

parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law". *Id.* at 392, 107 S.Ct. 2425.

An exception to the well-pleaded complaint rule exists where there is complete preemption of the state claim by federal law. *Id.* at 393, 107 S.Ct. 2425. Complete preemption applies only in extraordinary circumstances when Congress intends not only to preempt certain state law, but to replace it with federal law. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Willy,* 855 F.2d at 1165. It requires a clearly manifested congressional intent to make causes of action removable to federal court. *Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157, 1163 (5th Cir. 1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *Willy,* 855 F.2d at 1166. In *Caterpillar,* the Supreme Court explained:

> On occasion, the Court has concluded that the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co., supra,* at 65, 107 S.Ct. 1542. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. See *Franchise Tax Board, supra* at 24, 103 S.Ct. 2841 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

482 U.S. at 393, 107 S.Ct. 2425 (footnote omitted).

The Supreme Court concluded the opinion in *Caterpillar* by emphasizing that:

> [T]he presence of a federal question ... in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court .... a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

*Id.* at 398–99, 107 S.Ct. 2425 (footnote omitted).

A conclusion that necessarily follows from the foregoing is that for defendants to succeed in their contention that there has been a complete preemption that causes this court to have removal jurisdiction over the instant action they would have to satisfy their burden to demonstrate that at least one of the causes of action alleged by plaintiffs comes within the scope of a federal cause of action.

If there is preemption but not complete preemption, remand is required:

> The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

*Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 355 (3rd Cir.), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995).

B. *Defendants Have Not Demonstrated That There is Complete Preemption as to Any of the Claims of the Cyrs:*

ERISA's preemption clause says that ERISA supersedes "any and all State laws

insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). State-law causes of action are preempted by § 1144(a) if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir.), *cert. denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994). It often has been said that the language of the ERISA preemption clause is deliberately expansive, having been construed broadly by federal courts. *Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 643 (5th Cir.1997). A rule that has been applied under that broad standard is that a state cause of action relates to an employee benefit plan whenever it has a connection with or reference to such a plan. *Id.* However, the opinions of the Supreme Court in *DeBuono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *California Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); and *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), suggest that the preemption clause is not as expansive as once thought.

■ There is a possibility that some, and perhaps all, of the claims asserted by the Cyrs against Kaiser–Texas are preempted by ERISA.[5] The Cyrs seem to be claiming that the health care benefits that were expressly or impliedly promised by Kaiser–Texas in the Sears/Kaiser–Texas Agreement were not provided as they should have been. However, unless the court is persuaded that there has been a complete preemption, the court is not required to resolve the defensive preemption issues. *See Caterpillar*, 482 U.S. at 398, 107 S.Ct. 2425 ("[t]he fact that a defendant might ultimately prove that a plaintiff's

claims are pre-empted ... does not establish that they are removable to federal court"). And, there is a possibility that some or all of the claims asserted by the Cyrs against Kaiser–California, Kaiser Hospitals, and PMAT are preempted by ERISA. However, the court has concluded that it is not required to resolve any of those defensive issues because defendants have not demonstrated that ERISA completely preempts any cause of action asserted against any defendant by the Cyrs.

Defendants have not called the court's attention to anything that would cause the court to conclude that this case presents one of those extraordinary circumstances when Congress intended not only to preempt the state laws upon which the Cyrs rely but to replace those laws with federal laws. Nor have defendants suggested anything that would lead to the conclusion that there is a clearly manifested congressional intent to make a state-law cause of action asserted by the Cyrs removable to federal court. Perhaps more importantly, defendants have not demonstrated that there is a federal-law cause of action that stands in the stead of any cause of action alleged by the Cyrs.

None of the provisions of the civil enforcement section of ERISA, 29 U.S.C. § 1132, is broad enough to encompass all or any part of the claims the Cyrs have made against defendants in this action. None of those claims could be recharacterized as a claim under § 1132. There simply is no fit. Consequently, there is no claim alleged by the Cyrs that could be tried as a federal claim upon removal of this action. Rather, the only role federal law can play is the defensive role of whether some or all of the claims are preempted. That role can be readily performed in state court.

*C. Defendants Have Not Demonstrated That There is Complete Preemption as to Any of the Claims of the Lackers:*

■ The preemption language of FEHBA is less expansive than ERISA's. The FEHBA provision reads:

---

**5.** When the case is returned to the state court, defendants will have the burden to establish whatever preemption defenses they assert in

state court. *See, e.g., Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 255, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1). There is a possibility that there is preemption by reason of this provision of certain, if not all, of the claims of the Lackers. However, as with the claims of the Cyrs, the court does not need to determine the preemption issue because defendants have failed to demonstrate that, if there is any preemption as to any claim of the Lackers, the preemption is complete rather than purely defensive. The scholarly opinion of Judge Atlas in *Arnold v. Blue Cross & Blue Shield of Tex., Inc.,* 973 F.Supp. 726 (S.D.Tex.1997), provides further rationale for the court's handling of this aspect of this case. Defendants' reliance on *Burkey v. Government Employees Hosp. Ass'n,* 983 F.2d 656 (5th Cir.1993), is misplaced. The Burkeys were seeking to tack statutory penalties provided by a Louisiana statute onto a recovery in a claim for benefits under a FEHBA plan. The Fifth Circuit held that preemption prevented recovery of such a penalty. *Id.* at 660. That holding does not bear in any dispositive way on the issue of whether there is a complete preemption as to the claims asserted by the Lackers.

▮ The reliance by defendants on the claims procedures applicable to the FEHBA plan is without merit. Quite clearly, those claims procedures only apply where a claim has been made for benefits under the plan. There are administrative procedures that must be followed in the making and processing of such a claim; and, there are provisions governing the bringing of a judicial action if the claimant is unsuccessful in the administrative process. The limited nature of the prescribed claims procedures is emphasized by the provision that judicial action on any such claim is limited to the record that was before the OPM when it rendered its decision affirming the denial of the plan benefits. No such claim is being made, directly or indirectly, by plaintiffs in this action.

The contention of defendants that the action is subject to being removed because of the provisions of 28 U.S.C. § 1442(a)(1) is so facially lacking in substance that the court is not devoting further attention to it.

### D. *Conclusion:*

For the reasons given above, the court concludes that defendants have not carried their burden to demonstrate that at least one of the causes of action alleged by plaintiffs is subject to the complete preemption doctrine, with the consequence that defendants have not carried their burden to establish entitlement to removal. Therefore,

The court ORDERS that the above-captioned action be remanded to the state court from which it was removed.

### *FINAL JUDGMENT OF REMAND*

Consistent with the memorandum opinion and order signed by the court on the date of the signing of this final judgment of remand,

The court ORDERS, ADJUDGES and DECREES that the above-captioned action be, and is hereby, remanded to the state court from which it was removed.