Jennifer L. HALLER, Conservator and Guardian for Joseph A. Orekovich, Plaintiff,

v.

KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST, an Oregon corporation, et al., Defendants.

No. Civ. 01–759–JE.

United States District Court, D. Oregon.

Dec. 13, 2001.

L. Paul Hart, Angela J. Hart, Oak Grove, OR, for plaintiff.

Ruth J. Hooper, Troy S. Bundy, Hoffman, Hart & Wagner, LLP, Portland, OR, for defendants.

## ORDER

KING, District Judge.

Magistrate John Jelderks filed his Findings and Recommendation (# 11) on August 1, 2001 (the "F & R") and referred it to me on September 18, 2001. The matter

is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

When either party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. *See* 28 U.S.C § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Having given a *de novo* review of the issues raised in defendants' objections to the F & R, I find no error. Accordingly, I ADOPT the F & R(# 11) of Magistrate Jelderks.

Plaintiff's motion to remand (# 5) is granted. Defendants' motion to strike (# 8) is denied. Defendants' motion to dismiss (# 1) is denied without prejudice.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

JELDERKS, United States Magistrate Judge.

Plaintiff Jennifer Haller, in her capacity as conservator and guardian for Joseph Oreskovich (collectively referred to as Plaintiff), brings this medical malpractice action against defendants Kaiser Foundation Health Plan of the Northwest; Kaiser Foundation Hospitals; Northwest Permanente, PC; and Dr. Richard Dykstra. At issue is defendants' decision to treat Plaintiff with lithium over a period of several years, and whether Plaintiff suffered ill effects from this course of treatment or from defendants' failure to properly monitor blood levels or otherwise to provide appropriate medical care.

Pending before the court is Plaintiff's motion to remand to state court. I recommend that the motion be granted because this court lacks subject matter jurisdiction over this action.

## DISCUSSION

This action was filed in the Multnomah County Circuit Court for the State of Oregon in August 2000. Nine months later, defendants removed this action to federal court. Plaintiff moves to remand, arguing that the removal was untimely, and thus procedurally defective, and that this court lacks subject matter jurisdiction as well. I recommend that this action be remanded because the court lacks subject matter jurisdiction.

### A. *Procedural Defects*

Plaintiff contends the removal notice is untimely because it was filed more than 30 days after defendants first learned the basis for the claims that defendants now contend confer federal jurisdiction. *See* 28 USC § 1446(b). Defendants counter that the motion to remand is itself untimely, because it was filed more than 30 days (33 to be precise) after the Notice of Removal was filed, hence any procedural defects regarding the removal have been waived. *See* 28 USC § 1447(c). *See also Maniar v. FDIC,* 979 F.2d 782 (9th Cir.1992) (district court lacks discretion to *sua sponte* remand removed case, for procedural defects, after the period established by § 1447(c) has expired).

Resolution of that issue turns on whether FRCP 6(e) applies to a motion to remand.[1] The parties have not cited any Supreme Court or Ninth Circuit authority addressing this question,[2] and there is a

---

1. FRCP 6(e) provides that:

 Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

2. To be more precise, the parties cited no authority whatsoever on this question.

split of authority among the handful of published decisions from other courts. *Cf. Rashid v. Schenck Const. Co.,* 843 F.Supp. 1081, 1084 (S.D.W.V.1993) (FRCP 6(e) does not apply to a remand motion) with *Chott v. Cal Gas Corp.,* 746 F.Supp. 1377, 1377 (E.D.Mo.1990) (rule does apply).

 The court need not decide this question, though, if the court lacks subject matter jurisdiction over the removed claims (without regard to any procedural defects). Jurisdictional defects, unlike defects in the removal procedure, are never waived. *See* 28 USC § 1447(c); *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 69, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). In addition, even if the procedural defects are found to have been waived, the court still must determine whether it has subject matter jurisdiction. Accordingly, I will address the jurisdictional question first.

**B. *Subject Matter Jurisdiction***

The Notice of Removal appears to allege that federal jurisdiction is premised upon 28 USC §§ 1331 and 1441(b), 1442(a)(1), and 1446(b). The last is a procedural statute that furnishes no independent basis for jurisdiction, so I will focus solely on the former provisions.

Defendants contend this court has jurisdiction because the medical care in question was furnished pursuant to an employee benefits program governed by the Federal Employees Health Benefits Act (FEHBA), 5 USC § 8901, *et seq.* Plaintiff's motion to remand asserts that he left the military many years ago and his medical coverage during the period in question (1995 through 1998) was actually furnished by a private employer, Reed College.

 Defendants, as the removing party, bear the burden of establishing any disputed jurisdictional facts. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995). Defendants have not filed the relevant insurance policy with this court. Nevertheless, for purposes of this motion only, I accept defense counsel's representation, as an officer of the court, that the medical care in question was furnished pursuant to a federal employee medical insurance policy and not a policy provided by Reed College.

**1. Section 1442(a)(1)—federal defendant**

 Defendants' first ground for removal is 28 USC § 1442(a)(1):

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

The United States is not a defendant, nor is any agency or officer thereof a defendant. Defendants argue that because they were supplying a product or service pursuant to a contract with the federal government, they are "persons acting under an officer of an agency of the United States." I disagree.

A number of lower courts, often with little discussion, have assumed that a private party such as a defense contractor (to cite one example) may be a "person acting under" an officer of the United States. That is one possible interpretation of that phrase, but not the only permissible interpretation.

■ Those courts that have deemed private individuals to be "acting under" a federal officer have required that the federal officer have "direct and detailed control over the defendant." The Agent Orange cases are illustrative. In *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934 (E.D.N.Y.1992), Judge Weinstein held that the manufacturers were not acting under direct and detailed control of a federal official, because the government simply purchased off-the-shelf herbicides that the company had previously developed without government intervention. The composition of the product, and the manner in which it was produced, was not determined by the government, which was simply buying the product. *Id.* at 950. To the extent the contract specifications incorporated a formula, it was one supplied by the manufacturer. The Fifth Circuit reached a different result in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir.1998). That court found that Agent Orange was not an off-the-shelf product, but one specially made for the government. Commercial versions of the product were diluted with inert ingredients, but the government had insisted that its Agent Orange be undiluted. The Fifth Circuit said that was sufficient to distinguish *Ryan.*

Turning to our case, the First Claim, for malpractice, does not implicate any conduct "directly controlled by a federal officer." From the limited record before this court, the government did not tell defendants how to treat this patient. At most, the federal government had some input into what medical conditions are covered by the insurance policy, but that is not at issue in the first claim.

The Second Claim is more problematic, because it goes to issues such as inadequate staffing, giving doctors financial incentives to withhold necessary treatment, restricting a patient's ability to see a psychiatrist without Kaiser's approval, forcing patients to obtain psychiatric care from other (public) providers in order to minimize costs to Kaiser, etc. However, defendants have not established that any federal official ordered Kaiser to do this. As I understand the facts, Kaiser and other prospective health care providers annually submit a bid package in which they offer to provide certain services to federal employees and dependents in return for a fixed payment from the federal government. With limited exceptions, it does not appear that the Office of Personnel Management or other federal officials tell Kaiser how to run its hospital, or staff it, or how to compensate its doctors or what incentives to offer doctors to keep costs down. Kaiser decides that on its own.[3] *Cf. Pegram v. Herdrich,* 530 U.S. 211, 223–27, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (the HMO is not the ERISA plan, but a separate entity that pre-dates the plan, and the manner in which the HMO compensates its doctors is not governed by ERISA).

*Arnold v. Blue Cross & Blue Shield of Texas, Inc.,* 973 F.Supp. 726 (S.D.Tex. 1997), concerned medical care provided to a dependent of a federal employee. As here, Blue Cross was one of a number of health care providers who contracted with the Office of Personnel Management to provide health care benefits to federal employees. In *Arnold,* the lawsuit did not involve the quality of the care, but rather the refusal to pay for certain treatments or conditions, which allegedly violated Texas law, and also allegations that the benefits brochure misrepresented what claims the

---

**3.** Nothing I have said at this preliminary phase of the case is intended to be binding upon the trial court in subsequent proceedings on the merits or in determining whether a particular issue is subject to ordinary preemption.

policy would actually pay. The court concluded that, with regard to those claims, Blue Cross was not acting at the direction of the federal government. *Id.* at 740–42. Blue Cross had input into the decision as to what treatments and conditions would be covered or excluded; the federal government didn't order Blue Cross not to cover this condition. Likewise, the government didn't tell Blue Cross to write a deceptive brochure misleading customers regarding the scope of coverage.

The facts here counsel even more strongly against a finding of direct government control. Even assuming that a private health care provider can be a "person acting under" a federal officer—a question I do not decide—defendants have not met their burden of establishing that the present case is within the scope of § 1442(a)(1).

### 2. Federal Question—Complete Preemption

Defendants' alternative argument for federal jurisdiction is based on 28 USC §§ 1331 and 1441(b) (federal question). Defendants contend that the **FEHBA** completely preempts at least some sliver of this case, making it removable, and the court could then exercise supplemental jurisdiction over the remainder of the case.

■ Ordinarily, a "federal defense" is insufficient to confer federal question jurisdiction. *ARCO Environmental Remediation, LLC v. Montana Dep't of Health & Env. Quality,* 213 F.3d 1108, 1113 (9th Cir.2000). "[A] case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for*

S. California, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). "[T]he existence of federal jurisdiction depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims." *ARCO,* 213 F.3d at 1113.

■ A narrow exception to the general rule is the doctrine of "complete preemption," by which Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature. Complete preemption is rare. *Id.* at 1114. Among the few examples are the Labor–Management Relations Act of 1947, see *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393–94, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and the Employee Retirement Income Security Act of 1974 (ERISA), *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Only "complete preemption" statutes provide a basis for federal question jurisdiction when pled as a defense; ordinary preemption statutes do not. Consequently, it is possible for some or even all of the plaintiff's claims in a particular action to be preempted by federal law, yet federal question jurisdiction is absent. In such cases, it is the state court that must determine whether a particular state law claim (or part thereof) is preempted, subject ultimately to review by the United States Supreme Court. *See Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.,* 858 F.2d 936, 942 (3d Cir.1988).

■ The FEHBA preemption statute, 5 USC § 8902(m)(1), as amended in 1998,[4] provides that:

> The terms of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall

---

4. The parties did not brief whether the 1998 amendment applies to this action, which is premised upon conduct occurring between

1995 and 1998. For purposes of this motion, I will assume, without deciding, that the amendment is applicable.

supercede and preempt any state or local law, or any regulation issued thereunder, which relates to health insurance or plans.

By comparison, the ERISA preemption statute provides that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This is more sweeping than FEHBA preemption, and the scope of ERISA is far broader than the FEHBA.

If the issue in this case was whether Kaiser must pay for mental health treatment or a bone marrow transplant, and the court was being asked to interpret defendants' obligation to provide a specific benefit under the health insurance contract, then defendants' complete preemption argument might be better taken. However, the central issue here is the quality of the medical care furnished by defendants. *Cf. Santitoro v. Evans*, 935 F.Supp. 733, 737 (E.D.N.C.1996) (claims relating to quality, rather than quantity, of benefits received by plan participant are not preempted by the FEHBA); *Corporate Health Ins., Inc. v. Texas Dep't of Ins.*, 215 F.3d 526, 539 (5th Cir.2000) (state law regulating quality of medical care not preempted by FEHBA; distinguishing between regulating company in role as health care provider versus role as insurer, and rejecting argument that any state law that increases the cost of providing health care is preempted). *See also Pegram*, 530 U.S. at 228, 120 S.Ct. 2143 (distinguishing between pure "eligibility decisions" which turn on an ERISA plan's coverage of a particular condition or medical procedure for its treatment, and "treatment decisions" which are choices about how to go about diagnosing and treating a patient's condition, *i.e.*, given a patient's constellation of symptoms, what is the appropriate medical response, and recognizing that some decisions are "mixed"); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 356–57 (3d Cir.1995) (medical malpractice claims that merely attack the quality of benefits received do not fall within the scope of ERISA's enforcement provisions and are not completely preempted, whereas claims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted).

FEHBA preemption was found in *Hayes v. Prudential Ins. Co.*, 819 F.2d 921 (9th Cir.1987), but it was not a medical malpractice case. Rather, the claims in *Hayes* were premised upon the insurer's refusal to pay for certain benefits that the insured believed he was entitled to receive under the contract. Since such a dispute is within the scope of the FEHBA, and the dispute resolution process it establishes, the Ninth Circuit held that the claim was preempted.

■ By contrast, defendants here have not pointed to any provision of the FEHBA that allows a plaintiff to recover damages for medical malpractice. The FEHBA contains no such enforcement mechanism, because the dispute resolution procedures are aimed at disputes over whether particular benefits must be provided, and who must pay for them, not disputes over personal injuries that have already occurred as a result of alleged defects in the quality of the benefits provided. This is a critical distinction, because complete preemption is premised upon the assumption that the federal statute furnishes the only available relief. *Railway Labor Executives Ass'n*, 858 F.2d at 942, n. 3 ("If the district court determines that there is complete preemption, it necessarily will have determined that the federal cause of action has displaced the state one and that the case must go forward in the federal court as a case arising under the federal statute.") Conversely, "[i]f the federal statute creates no federal cause of action vindicating the same interest [that] the

plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in the federal court." *Id.* at 942 (footnote omitted).

Courts holding that the FEHBA does *not* completely preempt state law (so as to confer federal jurisdiction) include *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306 (3d Cir.1994) (although the specific theory that court relied on is no longer valid because the statute was amended in 1998); *Ramirez v. Humana, Inc.,* 119 FSupp2d 1307 (M.D.Fla.2000) (claim for benefits not completely preempted); *Lakeland Anesthesia, Inc. v. Louisiana Health Service and Indem. Co.,* 2000 WL 1801834 (E.D.La.2000) (claims against insured brought by medical provider not completely preempted, since claims were not premised upon the insurance policy but a separate contractual relationship between provider and insurer); *Weathington v. United Behavioral Health,* 41 FSupp2d 1315 (M.D.Ala.1999) (same); *Lambert v. Mail Handlers Benefit Plan,* 886 F.Supp. 830, 836 (M.D.Ala.1995); *Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas, Inc.,* 924 F.Supp. 67, 69–70 (W.D.Tex.1996); *Santitoro,* 935 F.Supp. at 737; and *Baptist Hosp. of Miami, Inc. v. Timke,* 832 F.Supp. 338 (N.D.Fla.1993).

*Cyr v. Kaiser Foundation Health Plan of Texas,* 12 F.Supp.2d 556 (N.D.Tex.1998), presented claims similar to those here. The plaintiff alleged medical malpractice, and also various theories premised on Kaiser's failure to train, rewarding doctors for providing less care to patients, inadequate peer review and quality control, and a wide assortment of other theories very similar to those alleged here. The court held that while the FEHBA may possibly preempt some claims, it does not completely preempt these claims. *Id.* at 567–68.[5]

Courts that have found complete preemption include *Roach v. Mail Handlers Benefit,* 2001 WL 58844 (N.D.Cal.2001) (claim for medical malpractice preempted because malpractice flowed in part from delay in providing medical care due to pre-certification requirement); *Kight v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.,* 34 FSupp2d 334 (E.D.Va.1999) (claims for malpractice and challenging policies giving doctors incentives for providing less care were completely preempted because court viewed them as a denial of benefits claim); *Hanson v. Blue Cross Blue Shield of Iowa,* 953 F.Supp. 270 (D.Iowa1996) (claim for benefits was completely preempted); *Caudill v. Blue Cross & Blue Shield of North Carolina,* 999 F.2d 74 (4th Cir.1993) (same); *Carter v. Blue Cross and Blue Shield of Florida,* 61 FSupp2d 1237 (N.D.Fla.1999) (same); and *Rievley v. Blue Cross Blue Shield of Tennessee,* 69 FSupp2d 1028 (E.D.Tenn.1999) (same).[6]

---

**5.** The *Cyr* court was construing the pre–1998 version of the preemption statute, and the recent amendments have broadened the preemption clause, but probably not enough to alter the result.

**6.** Some other cases of interest include *Negron v. Patel,* 6 F.Supp.2d 366 (E.D.Penn.1998) (medical malpractice claim not preempted, since the terms of the insurance contract have no bearing on this issue; some other claims such as bad faith in denying claim were preempted; claim attacking management of HMO was preempted; complete preemption not discussed because case filed in federal court); *Burkey v. Government Employees Hosp. Ass'n,* 983 F.2d 656 (5th Cir.1993) (claim premised upon delay in paying benefits preempted, but complete preemption not discussed); *Doyle v. Blue Cross Blue Shield of Illinois,* 2001 WL 641116 (N.D.Ill.2001) (FEHBA completely preempts certain claims not others; claims not preempted involved state rules governing insurer liens against personal injury recovery, and whether attor-

It is not possible to reconcile all of the foregoing authorities. I find more persuasive those authorities which conclude that medical malpractice claims are not *completely* preempted by the FEHBA. Accordingly, this court lacks jurisdiction and the action must be remanded.[7]

### C. *Other Outstanding Motions*

Defendants have moved to strike the motion to remand. The issues raised by that motion are more appropriately addressed as an objection to the motion to remand, which I have done above. Accordingly, the motion to strike should be denied.

Defendants also have moved to dismiss the Second Claim because plaintiff allegedly failed to timely replead that claim after the State court ordered plaintiff to make the claim more definite and certain. Since the dispute concerns whether plaintiff violated the state court judge's order, that motion should be denied with leave to renew it in state court.

### RECOMMENDATION

Plaintiff's Motion (# 5) to remand should be GRANTED. Defendant's Motion (# 8) to Strike should be DENIED. Defendant's Motion (# 1–2) to Dismiss should be DENIED without prejudice.

### SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due August 17, 2001. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

ney fees incurred to obtain that recovery could be setoff).

7. In so ruling, I do not preclude defendants from arguing, on remand, that the FEHBA

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

Aug. 1, 2001.

preempts some portion of plaintiff's claims or some of the 48 specifications of negligence in the Second Amended Complaint.